# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**CHARLES PHILIP SMITH**                                                        **PLAINTIFF**

**v.**                                                           **CIVIL NO. 1:16cv406-HSO-JCG**

**HUNTINGTON INGALLS INCORPORATED**                     **DEFENDANT**

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT HUNTINGTON INGALLS INCORPORATED'S MOTION [67] FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant Huntington Ingalls Incorporated's Motion [67] for Summary Judgment. This Motion is fully briefed. After review of the Motion, the Response, the related pleadings, the record as a whole, and relevant legal authority, the Court finds that Defendant Huntington Ingalls Incorporated's Motion [67] should be denied.

## I. BACKGROUND

A.   Relevant facts

The dispute in this case is whether Defendant Huntington Ingalls Incorporated ("Ingalls") wrongfully terminated Plaintiff Charles Philip Smith ("Smith") for what Ingalls claims were violations of its security protocol prohibiting its employees from having "firearms and all other weapons on company premises, including its parking lots." Mem. in Supp. [68] at 1.

This matter arises out of the May 2, 2016, discovery of "two speed loaders" in Smith's van while it was parked in one of Ingalls' parking lots at the shipyard in

Pascagoula, Mississippi. Security Report [67-8] at 1-2. Smith's shift began at 2:00 p.m. that day and would have ended at 9:00 p.m. Smith Dep. [70-2] at 7.

According to Ingalls security officer Shaun Blaine ("Blaine"), around 9:00 p.m. that evening he was making rounds checking the "red zone parking lot" with a flashlight, when he observed "two speed loaders for a revolver" in plain view inside Smith's van. Security Report [67-8] at 1-2. Blaine notified his supervisor, Captain Alfred Lewis, who joined him at the scene and confirmed the presence of the speed loaders. *Id.* Captain Lewis radioed for backup and for a check of the vehicle's tag, which resulted in Smith being identified as the owner.[1] *Id.* Officers James Cosman ("Cosman") and Jonathan Daffron ("Daffron") were dispatched to retrieve Smith and escort him to his vehicle so that a thorough search could be conducted in Smith's presence. *Id.*

When Smith arrived, he unlocked his van and Cosman and Daffron searched for any contraband prohibited under Ingalls' policy. *Id.* In addition to the two speed loaders, which were filled with hollow point bullets, a revolver loaded with five rounds of hollow point bullets was also discovered. *Id.* Another item located during the search was identified by Ingalls as a "Billy club/pipe," *id.*, but Smith maintains it was simply a "tire checker," Smith Depo. [70-2] at 3. The retrieved items were placed on the hood of the Smith's van, photographed, and then returned

---

[1] Ingalls security Officer James Cosman testified that Ingalls' security has the ability to run a tag through Ingalls' system as well as the police system. Cosman Depo. [70-10] at 3.

to the rear of the van, out of Smith's reach. Security Report [67-8] at 1-2. Smith was instructed to leave the premises and not to return until directed to do so by Ingalls' Labor Relations Department. *Id.*

On May 9, 2016, Smith was asked to return to Ingalls to meet with Lance Eubanks ("Eubanks"), a labor relations representative. Eubanks Decl. [67-12] at 1-2. Prior to attending the meeting with Eubanks, Smith met with his union representative, J.D. Mergenshroer, and gave him a copy of the Mississippi Supreme Court's decision in *Swindol v. Aurora Flight Sciences Corp.*, 194 So. 3d 847 (Miss. 2016). Mergenshroer Dep. [70-12] at 3. When Smith and Mergenshroer met with Eubanks, Mergenshroer provided a copy of *Swindol* to Eubanks and suggested that Smith should not be fired based upon the Mississippi Supreme Court's interpretation of Mississippi Code § 45-9-55. Eubanks Decl. [67-12] at 1-2.

Eubanks consulted with his manager, Mark Fredrick ("Fredrick"), and Fredrick's manager, Director of Labor Relations Tony Skelton, who instructed Eubanks to proceed with the termination of Smith because the "legal department was aware of the ruling and had confirmed that the company had the legal right to enforce its prohibition of firearms on company parking lots because public access to them was restricted." *Id.* Smith was terminated on May 9, 2016. *Id.*; Termination Memo. [25] at 1.

B. Procedural history

Invoking diversity jurisdiction, Plaintiff filed a Complaint [1] in this Court on November 14, 2016, followed by an Amended Complaint [20] on April 7, 2017,

3

advancing claims against Ingalls under state law for wrongful discharge, and seeking compensatory and punitive damages.[2] Plaintiff alleges that his May 9, 2016, discharge for having a "firearm in his locked vehicle on company premises" violated Mississippi public policy, specifically Mississippi Code § 45-9-55. Am. Compl. [20] at 2.

Ingalls has filed a Motion for Summary Judgment [67] arguing that it is entitled to judgment as a matter of law on Smith's claims for wrongful discharge and punitive damages. Mem. in Supp. [68] at 1. Ingalls contends that its policy prohibiting firearms in its parking lots is enforceable because Ingalls "restricts public access with no-trespassing signs, security patrols, and closed circuit cameras monitored in a central security station," which complies with the mandate of Mississippi Code § 45-9-55(2), such that Ingalls could terminate Smith for having a firearm in his van in the parking lot. *Id.*

Ingalls asserts that its policy prohibiting weapons is communicated to its employees during their orientation, through articles in the shipyard newspaper, and by way of signs posted at the entrances of all parking lots which state that weapons are prohibited and that vehicles are subject to search. *Id.* at 2. Ingalls further maintains that Smith was properly terminated for violating this policy because he

---

[2] Smith had originally named Huntington Ingalls Industries, Inc., as a Defendant. On January 3, 2017, the Magistrate Judge entered a Text Only Order granting Smith's Motion [6] to Substitute Proper Party Defendant, substituting Huntington Ingalls Incorporated as the proper party Defendant and terminating Huntington Ingalls Industries, Inc.

4

had weapons including "a handgun, ammunition[,] and a pipe" in his van on shipyard property. Eubanks Decl. [67-12] at 2.

Alternatively, Ingalls seeks summary judgment on its affirmative defense that Smith failed to mitigate his damages such that he should not receive back pay after November 2016, when Smith refused to return to work. Mem. in Supp. [68] at 24-25. Ingalls posits that Smith's punitive damages claim should be dismissed because, in terminating Smith for having a weapon in his van, Ingalls relied upon advice of its counsel that "Ingalls is entitled to enforce its firearms prohibition because it restricts public access to its parking lots." *Id.* at 7-8, 23-24.

Smith responds that around March or April 2016 he learned that Mississippi law permitted him to have a firearm in his vehicle at work because the parking lot was not restricted. Mem. in Opp'n. [71] at 3. He then began keeping a handgun in his vehicle for his own safety. *Id.* Smith asserts that Ingalls' parking lots did not qualify as restricted under the statute because they did not have a physical barrier or a security gate at the entrances, *id.* at 19-20, and argues that he was unlawfully terminated for having a firearm in his van, in violation of Mississippi Code § 45-9-55(2), *id.* at 19-24. Smith further contends that he is entitled to an award of punitive damages given that Mergenshroer supplied Eubanks with a copy of the Mississippi Supreme Court's opinion in *Swindol v. Aurora Flight Sciences Corp.*, 194 So. 3d 847 (Miss. 2016), prior to his termination. Thus, Ingalls had knowledge that it was violating Mississippi law and cannot now rely on advice of counsel as a defense. *Id.* at 24-25.

## II. DISCUSSION

A. Relevant legal standards

1. Summary judgment

"Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Cox v. Wal-Mart Stores E., L.P.*, 755 F.3d 231, 233 (5th Cir. 2014); *see* Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, a court "view[s] the evidence and draw[s] reasonable inferences in the light most favorable to the nonmoving party." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (quoting *Cox*, 755 F.3d at 233); *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).

Before it can determine that there is no genuine issue for trial, a court must be satisfied that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (the nonmovant must set forth specific facts to contradict the specific facts set forth by the movant, general averments are not sufficient).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine

issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). An actual controversy exists "when both parties have submitted evidence of contradictory facts." *Salazar-Limon v. Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quotation omitted).

2. Mississippi Code § 45-9-55

A federal court sitting in diversity must apply state substantive law. *See, e.g., Times-Picayune Pub. Corp. v. Zurich American Ins. Co.*, 421 F.3d 328, 334 (5th Cir. 2005) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The parties do not dispute that Mississippi substantive law controls here.

Mississippi Code § 45-9-55 provides:

(1) Except as otherwise provided in subsection (2) of this section, a public or private employer may not establish, maintain, or enforce any policy or rule that has the effect of prohibiting a person from transporting or storing a firearm in a locked vehicle in any parking lot, parking garage, or other designated parking area.

(2) *A private employer may prohibit an employee from transporting or storing a firearm in a vehicle in a parking lot, parking garage, or other parking area the employer provides for employees to which access is restricted or limited through the use of a gate, security station or other means of restricting or limiting general public access onto the property.*

(3) This section shall not apply to vehicles owned or leased by an employer and used by the employee in the course of his business.

(4) This section does not authorize a person to transport or store a firearm on any premises where the possession of a firearm is prohibited by state or federal law.

7

> (5) A public or private employer shall not be liable in a civil action for damages resulting from or arising out of an occurrence involving the transportation, storage, possession or use of a firearm covered by this section.

Mississippi Code § 45-9-55 (emphasis added). According to Ingalls, it may prohibit firearms in vehicles in the parking lots because its parking lots, including the lot where Smith was parked, qualified as "restricted" under the statute. Specifically, Ingalls contends that it employs a "layered strategy to restrict access to parking lots at the shipyard" which consists of "no trespassing signs, security patrols, and closed circuit cameras monitored in a central security station." *Id.* Smith counters that Ingalls' parking lots are not restricted or limited within the meaning of the statute, therefore Ingalls did not have the authority to terminate Smith on this basis. Mem. in Opp'n [71] at 2-3.

    3.    <u>Wrongful termination</u>

"Mississippi follows the doctrine of employment at will, under which either an employer or an employee may terminate an employment relationship, unless the parties are bound by an employment contract or a contract detailing the term of employment." *Obene v. Jackson State Univ.*, 233 So. 3d 872, 875 (Miss. Ct. App. 2017). Mississippi's adherence to the employment at will doctrine usually precludes an at-will employee from suing for wrongful termination, as an employer may discharge an employee "for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible." *Id.* at 876 (quoting *Galle v. Isle of Capri Casinos Inc.*, 180 So. 3d 619, 622 (Miss. 2015) (quotation omitted)); *see McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 876 (Miss. 1993).

8

In *McArn*, the Mississippi Supreme Court delineated two narrow exceptions to the doctrine of employment at will. Specifically,

> (1) an employee who refuses to participate in an illegal act . . . shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing [an] action in tort for damages against his employer.

*McArn*, 626 So. 2d at 607. The former exception is intended to "protect an employee from being forced to choose between committing a crime and losing his . . . job," *Frank v. City of Flowood*, 203 So. 3d 786, 792 (Miss. Ct. App. 2018) (quoting *Galle*, 180 So. 3d at 623), while the latter is premised upon an employer's duty "not to thwart the public interest by terminating employees for speaking the truth," *id.* (quoting *Cmty. Care Ctr. of Aberdeen v. Barrentine*, 160 So. 3d 216, 220 (Miss. 2015)).

In 2015, the United States Court of Appeals for the Fifth Circuit certified the following employment at will question to the Mississippi Supreme Court:

> Whether in Mississippi an employer may be liable for a wrongful discharge of an employee for storing a firearm in a locked vehicle on company property in a manner that is consistent with Section 45-9-55.

*Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 523 (5th Cir. 2015). The Mississippi Supreme Court answered in the affirmative, that an employer may be liable for the termination of an employee for having a firearm in a locked vehicle, holding that Mississippi's employment at will doctrine "must yield to express legislative action and/or prohibitions found in federal or state law." The Court concluded that through its enactment of Mississippi Code § 45-9-55, the Mississippi

9

Legislature had "independently declared" that terminating an employee for having a firearm inside a locked vehicle in the employer's parking lot, parking garage, or other parking area is "legally impermissible." *Swindol v. Aurora Flight Scis. Corp.*, 194 So. 3d 847, 855 (Miss. 2016); *see Parker v. Leaf River Cellulose, LLC,* 668 F. App'x 77, 77 (5th Cir. 2016) ("Succinctly put, the Mississippi Supreme Court answered yes.").

Based upon the answer to its certified question, the Fifth Circuit found that the Mississippi Supreme Court had "for the first time recognized a statutory exception to the employment at will doctrine that is equivalent to the public policy exceptions identified in *McArn*." *Swindol v. Aurora Flight Scis. Corp.*, 832 F.3d 492, 494 (5th Cir. 2016).

Of note here, Smith was terminated on May 9, 2016, after the Mississippi Supreme Court had answered the Fifth Circuit's certified question in *Swindol* on March 24, 2016. *Swindol v. Aurora Flight Scis Corp.*, 194 So. 3d 847 (Miss. 2016).

4. <u>Punitive damages under Mississippi law</u>

Mississippi Code § 11-1-65(1)(a) provides that

[i]n any action in which punitive damages are sought:

(a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

. . . .

(d) The court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier of fact shall determine whether to award punitive damages and in what amount.

Miss. Code Ann. § 11-1-65(1)(a)-(d).

"Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits." *Warren v. Derivaux*, 996 So. 2d 729, 738 (Miss. 2008) (quotations omitted). Whether punitive damages should be awarded depends upon the particular circumstances of a case. *Robertson v. Catalanotto*, 205 So. 3d 666, 676 (Miss. Ct. App. 2016). In determining whether the issue of punitive damages should be submitted to a jury, a trial court decides "whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard." *Doe ex rel. Doe v. Salvation Army*, 835 So. 2d 76, 79 (Miss. 2003) (quotation omitted).

B. <u>Ingalls' Motion [161] for Summary Judgment should be denied as to Smith's claims for wrongful discharge and punitive damages, and as to Ingalls' affirmative defense of failure to mitigate.</u>

1. <u>Smith's wrongful discharge claim</u>

Ingalls argues that Smith's wrongful discharge claim should be dismissed because the security measures Ingalls took brought it within the exception set forth in § 45-9-55(2), which provides that

> [a] private employer may prohibit an employee from transporting or storing a firearm in a vehicle in a parking lot, parking garage, or other parking area the employer provides for employees to which access is restricted or limited through the use of a gate, security station or other means of restricting or limiting general public access onto the property.

11

Miss. Code § 45-9-55(2). Ingalls contends that its policy is enforceable because it "restricts public access with no-trespassing signs, security patrols, and closed circuit cameras monitored in a central security station." Mem. in Supp. [68] at 1.

Plaintiff counters that, at the time he was terminated, Ingalls' parking lot was not properly restricted within the meaning of the statute because anyone could drive into the parking lot from a public road, there were no gates, and the guard shack was never occupied. Mem. in Opp'n [71] at 19-20. Smith testified in his deposition that, at the time of his termination, the signs at the entrances were "faded, black and white," Smith Depo. [70-2] at 10, that he never saw security patrolling the parking lot, *id*. at 16, and that he never saw cameras in the parking lots, *id*. at 16. Mergenshroer testified that at the time of Smith's termination the signs at the entrances to the parking lot were rusty, "falling down" and faded, and that new signs were put up following Smith's termination. Mergenshroer Depo. [70-12] at 7.

After a thorough review of the record before it, the Court finds that Ingalls has not carried its burden of demonstrating that no genuine dispute of material fact exists regarding what specific security measures Ingalls actually had in place and whether they were effective to properly restrict the parking lot under Mississippi law, or to place Smith on notice that the parking lot was restricted.

Because the Court is sitting in diversity, it begins with the Mississippi Supreme Court's admonition in *Swindol* that the employment at will doctrine "must

12

yield to express legislative action and/or prohibitions found in federal or state law." *Swindol,* 194 So. 3d at 855. This includes the maxim that private employers may not establish policies that have the effect of prohibiting a person from transporting a firearm in a locked vehicle in any parking lot. Mississippi Code § 45-9-55. The exception to this general rule found at Mississippi Code § 45-9-55(2)[3] should be narrowly construed and cannot be applied in a manner that violates federal law, specifically the Second Amendment to the United States Constitution, which provides that

"the right of the people to keep and bear Arms, shall not be infringed."
U.S. CONST. amend. II.

Ingalls does not contend that the parking lot is gated, or that it has manned, controlled access to its parking lots. In fact, the Declaration [67-3] of Rick Graham, Ingalls Director of Security, states that Ingalls has determined that erecting gates would not be a "practical or effective means of restricting general public access to its parking lots" and that erecting security stations at all of the parking lot entrances and "staffing them around the clock would be cost prohibitive."[4] Graham Decl. [67-

---

[3] Of note, the Court observes that Mississippi Code § 45-9-55(2) does not mention no trespassing signs as a means of restricting access to a parking lot. Indeed, if no trespassing signs were sufficient to restrict access, it would seem that there would be no need for the statute to specifically mention gates as a proper means of restricting access.

[4] It appears to the Court that in an attempt to restrict its parking lots, Ingalls made a business decision to forgo the expense of gates and/or security stations. However, expense does not constitute a permissible ground for violation of the Second Amendment or Mississippi law.

13

3] at 3-4. Rather, Ingalls contends that there were no trespassing signs located at each entrance to its parking lots and closed circuit cameras monitoring the parking lots. Ingalls also contends that it had roving security patrols and that a central security station monitored all closed circuit cameras.[5]

Smith and Mergenshroer have testified, however, that the signs were rusted, falling down, and essentially not legible or sufficient to place an individual on notice of the parking lots' restrictions. Smith also testified that he never saw cameras or security guards patrolling the parking lots. At this summary judgment stage, the Court must resolve all factual disputes in Smith's favor and may not "weigh the evidence" or make "credibility determinations." *Heinsohn v. Carabin & Shaw*, 832 F.3d 224, 245-46 (5th Cir. 2016).

In addition, Smith appears to argue in his brief that Ingalls' policy is not enforceable. In this regard, the Court is of the view that this case also presents issues of fact regarding whether Ingalls' parking lot policy, as applied by Ingalls, infringes on the Second Amendment rights of its employees. As Ingalls indicates in its submissions, it employs thousands of individuals, many of whom presumably reside distances away from the shipyard, requiring them to commute long distances

---

[5] Although not raised as an issue, the Court notes that Ingalls' security patrols seem to be more focused on keeping nonemployees from loitering in the parking lots, rather than preventing nonemployees from entering them in the first instance. Ingalls Shipbuilding's Director of Security Rick Graham ("Graham") stated in his Declaration that "unauthorized persons such as employees' family members and those distributing leaflets who are stopped during the [security] patrols are instructed to leave immediately." Graham Decl. [67-3] at 2.

14

on public roads to and from work.  Indeed, the record reflects that Smith resides in Mobile, Alabama, and commuted from there to Ingalls Shipyard in Pascagoula, Mississippi, to work.  Ingalls' policy as applied arguably has the effect of precluding its employees from having firearms in their vehicles during these commutes, which in some cases may be quite long.

The Court is mindful that an employer may prohibit firearms within the workplace itself, but questions of fact exist in this case regarding whether the parking lots in this situation can properly be considered parts of the workplace given the size of Ingalls' actual work facilities and its workforce.  One relevant fact question not made clear in the present record is whether or not employees parking in the lots must next pass through a screened or controlled access point to gain access to the workplace itself.  If so, this would appear to obviate the need to restrict firearms in vehicles parked in the parking lots, which by Ingalls' own admission do not require vehicles to pass through any screening before parking.

In addition, because it is undisputed that vehicles are not searched or screened as they enter the parking lots, Ingalls would have no way of knowing that a firearm was present unless the employee left it sitting in plain view in the vehicle, which is what occurred in this case.  Thus, when balanced against the potential for intrusion on a constitutional right and a violation of state law, the effectiveness of Ingalls' parking lot policy in achieving its stated goal of improving security seems questionable.  At a minimum there are material fact questions for resolution at trial

15

regarding whether Ingalls' policy, as applied by Ingalls in this case, resulted in Smith's wrongful termination.

Here, the Court finds that this conflicting evidence is substantial and creates a material question of fact for trial. Viewing the evidence in the light most favorable to Smith as the nonmovant, Smith has produced sufficient evidence to create a jury question regarding whether Ingalls' parking lot qualified for the exception set forth at Mississippi Code § 45-9-55(2) at the time Smith was discharged, and whether he was wrongfully terminated. Summary judgment should be denied on this issue, and Smith's wrongful termination claim will proceed.

2. Smith's claim for punitive damages/gross negligence

Ingalls contends that Smith's claim for punitive damages should be dismissed because Ingalls relied in good faith upon the advice of counsel when it terminated Smith because no court had previously interpreted § 45-9-55(2). Ingalls does acknowledge that, after Smith's termination, the statutory provision at issue was interpreted by *Parker v. Leaf River Cellulose, LLC*, No. 2:14cv9, 2017 WL 2197130 (S.D. Miss. May 18, 2017), to require that a parking lot be restricted or limited by gate, security station, or other similar barrier at or near the point of entrance, but takes the position that *Parker* is factually distinguishable and that it "impermissibly rewrites subsection (2)." Mem. in Supp. [68] at 19.

In response, Smith proffers that Ingalls could not rely on its counsel's advice because, prior to his termination, Mergenshroer provided Eubanks with a copy of

16

*Swindol* in which the Mississippi Supreme Court held that an employer could be liable for terminating an employee in violation of Mississippi Code § 45-9-55. Smith posits that *Parker* is on point and supports his position that punitive damages should go to the jury, arguing as follows:

> In *Parker*, the district court declined to grant summary judgment on Plaintiff's claim for punitive damages at the summary judgment stage because:
>
>> There is evidence that Defendant had notice prior to Plaintiff's termination that its policy prohibiting firearms in its employees' vehicles could be in violation of Plaintiff's rights under § 45-9-55. (*See* Plaintiff Affidavit [69-1] at ¶ 11; Garner Affidavit [69-12] at ¶¶ 4-6.) Garner, Plaintiff's supervisor, even communicated with GP's head of security that the firearms policy might be in violation of § 45-9-55. (*See* Garner Affidavit [69-12] at ¶ 5.) From this evidence, a reasonable jury could find that Defendant's actions were in "ruthless disregard for" Plaintiff's rights under § 45-9-55.
>
> *Parker v. Leaf River Cellulose*, LLC, 2017 WL 2197130, at *4.
>
> In essence, the Court deferred ruling on this issue until trial, "so questions of foundation, relevancy, and prejudice can be resolved in their proper context." *Anglin v. Sears, Roebuck and Co.*, 139 F.Supp.2d 914, 917 (N.D. Ill. 2001). Smith requests that this issue be similarly deferred to trial for a ruling.

Mem. in Opp'n [71] at 24-25 (citing *Parker v. Leaf River Cellulose, LLC*, No. 2:14cv9, 2017 WL 2197130, at *4 (S.D. Miss. May 18, 2017)).[6]

"Good-faith reliance upon advice of counsel **may** prevent imposition of punitive damages." *Murphree v. Federal Ins. Co.*, 707 So. 3d 523, 533 (Miss. 1997)

---

[6] Although the Court need not rely on *Parker* to reach the conclusion it does today, it finds the reasoning in *Parker* to be highly persuasive.

(emphasis in original). For example, in a case where the facts are not in dispute and an ambiguous statutory provision has not been interpreted, a party may be entitled to rely on its counsel's interpretation and avoid punitive damages. *Gorman v. Southeastern Fidelity Ins. Co.*, 775 F.2d 655, 659-60 (5th Cir. 1985). However, a party may not hide behind advice of counsel if it is unfounded. *Murphree*, 707 So. 2d at 533.

At this juncture of the case, the Court cannot say that no material fact question exists that would preclude a reasonable juror from finding that Ingalls' reliance on the advice of counsel was not in good faith, since Ingalls does not deny that it was aware of the statute and the decision in *Swindol* when it terminated Smith. Viewing the evidence in the light most favorable to Smith as the nonmovant, the Court finds that a genuine issue of material fact remains on Smith's punitive damages claim. Ingalls is not entitled to summary judgment on this issue.

### 3. Ingalls' affirmative defense of failure to mitigate

Ingalls also seeks summary judgment on its affirmative defense that Smith failed to mitigate his damages, arguing that in November 2016 Smith's managers informally offered to reinstate him to his former job, but he declined. Mem. in Supp. [68] at 24-25. In response, Smith contends that Ingalls' informal inquiry was not tantamount to a formal job offer, that he already had a job when these inquiries were made, and that he did in fact mitigate his damages. Mem. in Opp'n [71] at 26.

An injured party has a duty to mitigate damages, but a standard of reasonableness applies to that duty. *R. McKnight & Son v. C & I Entm't*, 100 So. 3d 1022, 1028-29 (Miss. Ct. App. 2012). "Whether an injured person has mitigated his damages requires a factual assessment of the reasonableness of his conduct." *Hill v. City of Pontotoc, Miss.*, 993 F.2d 422, 427 (5th Cir. 1993). Whether Smith's conduct in seeking employment and otherwise attempting to mitigate his damages was reasonable is a question for the finder of fact. Ingalls' Motion as to its affirmative defense of failure to mitigate should be denied.

### III. CONCLUSION

**IT IS**, **THEREFORE**, **ORDERED AND ADJUDGED** that Defendant Huntington Ingalls Incorporated's Motion [67] for Summary Judgment is **DENIED.**

**SO ORDERED AND ADJUDGED** this the 27th day of August, 2018.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE